# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

EXXON MOBIL CORPORATION,

*Petitioner*,

v.

PIPELINE AND HAZARDOUS
MATERIALS SAFETY ADMINISTRATION;
UNITED STATES DEPARTMENT OF
TRANSPORTATION,

*Respondents.*

No. 25-60513

## MOTION TO DISMISS

Pursuant to Federal Rule of Appellate Procedure 27 and Fifth Circuit Rule 27, the government moves to dismiss this petition for review. In July 2020, the Pipeline and Hazardous Materials Safety Administration (PHMSA) issued a final order that determined that petitioner violated pipeline safety regulations and directed petitioner to take corrective action. After agreeing to extend the final order's compliance deadline multiple times, in June 2025, the agency sent a letter to petitioner explaining that further extensions were unlikely to be granted.

Petitioner cannot bootstrap a challenge to the agency's five-year-old final order on the heels of this letter. The petition for review from the final

order should be dismissed as untimely, and the petition should otherwise be dismissed as nonfinal. Petitioner opposes this motion to dismiss.

## STATEMENT

1. The Pipeline Safety Act (PSA), 49 U.S.C. § 60101 *et seq.*, authorizes PHMSA to promulgate minimum safety standards for pipeline transportation and for pipeline facilities. 49 U.S.C. § 60102(a)(2). Consistent with that statutory directive, PHMSA has promulgated regulations for the transportation of hazardous liquids by pipeline. *See* 49 C.F.R. Part 195. These regulations apply to the design, construction, testing, operation, and maintenance of hazardous liquid pipeline facilities, including "breakout tanks" that are used to relieve surges or to provide storage for continued transportation by pipeline, 49 C.F.R. §§ 195.1(c) (applying safety standards in Part 195 to breakout tanks), 195.2 (defining breakout tank for purposes of Part 195), 195.132 (prescribing requirements for the design and construction of breakout tanks), 195.205 (prescribing requirements for the repair, alteration, and reconstruction of in-service breakout tanks), 195.307 (prescribing requirements for pressure testing aboveground breakout tanks), 195.432 (prescribing requirements for the inspection of in-service breakout tanks).

The Pipeline Safety Act further authorizes PHMSA to take actions to

enforce these regulations. For example, PHMSA can conduct investigations, demand records, and inspect property to determine whether an operator is complying with safety standards. *See* 49 U.S.C. § 60117(a)-(d). If an operator has not complied with these standards, the agency may issue a "notice of probable violation" to initiate an enforcement action. 49 C.F.R. § 190.207. The enforcement action culminates in a "final order." *Id.* § 190.213. In this order, PHMSA may direct an operator to take necessary actions to comply with the requirements. *See* 49 U.S.C. § 60118(b).

2. In 2019, PHMSA conducted an inspection of petitioner's pipelines. *See* Dkt. 1-1 at 15. In March 2020, it issued a notice of probable violation. *See id.* at 15-20. Petitioner did not contest the terms of the notice of probable violation or the proposed corrective measures. *See id.* at 13.

On July 2, 2020, the agency issued a final order in the proceeding. *See id.* at 13-14. The final order determined that petitioner violated three pipeline safety regulations. First, in Item 1, the order determined that petitioner violated 49 C.F.R. § 195.1, a regulation governing the applicability of the requirements in Part 195 to breakout tanks. The notice of probable violation explained that petitioner "failed to identify all breakout tanks at its Anchorage Tank Farm" and improperly "omitted" certain tanks that should have been listed as breakout tanks. Dkt. 1-1 at 16.

3

Second, in Item 2, the order determined that petitioner violated 49 C.F.R. § 195.420 by failing to inspect certain mainline valves for the pipelines at this location at least twice each calendar year (at intervals not exceeding 7 ½ months). Dkt. 1-1 at 16. Third, in Item 3, the order determined that petitioner violated 49 C.F.R. § 195.406 by failing to establish the maximum operating pressure for two pipelines. *Id.; see* 49 C.F.R. § 195.2 (defining maximum operating pressure as "the maximum pressure at which a pipeline or segment of a pipeline may be normally operated under [Part 195]"). The agency made clear that "[t]hese findings of violation will be considered prior offenses in any subsequent enforcement action." *Id.*

The final order stated that petitioner "is ordered to take the actions proposed in the enclosed [n]otice to correct the violations." *Id.* As relevant, for the breakout tanks, the notice explained that petitioner had "proposed a development plan to comply … and to provide updates quarterly," and the agency "finds the plan acceptable." *Id.* at 20. Petitioner did not file a petition for review from the order at the time.

3. The final order set the deadline for compliance: petitioner had to comply within 90 days of receipt of the order. *See* Dkt. 1-1 at 20. The final order, however, explained that the agency could grant an extension of time for compliance upon a timely written request demonstrating good cause.

4

*See id.* at 14. Petitioner has requested a series of extensions—five total—to fully execute its development plan, which primarily involves constructing new breakout tanks. *See* Dkt. 1-1 at 10. The agency has granted each extension request, most recently extending the deadline to June 30, 2026. *See id.*

On June 27, 2025, the agency issued a letter explaining that further extensions were unlikely to be granted to petitioner. *See* Dkt. 1-1 at 9-10. The letter explained that the agency "does not intend to grant any further requests to extend the deadline for the Item 1 Compliance Order," *i.e.*, the portion of the order relating to the breakout tanks. *Id.* at 10. The letter further stated that the agency "expects [petitioner] to comply with the terms of the Item 1 Compliance Order by June 30, 2026." *Id.*

Petitioner filed a petition for review of the July 2, 2020 final order and the June 27, 2025 letter on September 22, 2025. *See* Dkt. 1.

## DISCUSSION

1. The petition for review of the July 2, 2020 final order should be dismissed as untimely. The Pipeline Safety Act permits a "person adversely affected by ... an order" to file a petition for review in the court of appeals where the person resides, but the petition "must be filed not later than 89 days after the ... order is issued." 49 U.S.C. § 60119(a)(1). Petitioner filed

5

this petition for review on September 22, 2025, more than five years after the final order issued on July 2, 2020. Because petitioner long ago missed the deadline, the "statutory time limitation[]" should be "strictly enforced," and the petition for review should be dismissed as untimely. *Texas Mun. Power Agency v. EPA*, 799 F.2d 173, 175 (5th Cir. 1986).

Petitioner suggests that it can bring a challenge to this years-old final order because the letter "reaffirmed" the final order. Dkt. 1-1 at 2. But the letter did not have anything to do with the substance of the order, which was settled in July 2020. Dkt. 1-1 at 14. After summarizing the terms of the development plan, the letter explained that PHMSA had granted "five extensions of time" for petitioner "to fully execute its development plan," and having reviewed all of the information presented, the agency did "not intend to grant any further requests to extend the deadline." Dkt. 1-1 at 10. Indeed, the letter could not revisit the substance of the final order, as only the Associate Administrator for Pipeline Safety at the Office of Pipeline Safety (OPS) can revise a final order upon an appropriate petition for reconsideration, *see* 49 C.F.R. §§ 190.213, 190.243. The letter regarding further extensions was not issued by the Associate Administrator for Pipeline Safety; it was issued by a lower-ranking OPS Regional Director. *See* Dkt. 1-1 at 10. At bottom, petitioner seeks to bring a challenge to the

final order now because the Regional Director stated that he does not intend to grant further extensions. That argument would not work if a plaintiff were attempting an untimely appeal from a final judgment, and it fails for the same reasons here.

In any event, the petition for review should be dismissed for the independent reason that petitioner has forfeited a challenge to the order. Before issuing the final order, PHMSA issued a notice of probable violation, which petitioner deliberately chose not to contest. That choice "constitutes a waiver of the right to contest the allegations in the notice of probable violation and authorizes [PHMSA] … to find the facts as alleged in the notice of probable violation and to issue a final order." 49 C.F.R. § 190.208; *see Indigenous Peoples of Coastal Bend v. United States Army Corps of Eng'rs*, 132 F.4th 872, 882 (5th Cir. 2025) ("A party forfeits a claim or argument by failing to raise it at the appropriate time."); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (explaining the "general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objections made at the time appropriate under its practice").

What's more, petitioner has affirmatively waived any challenge to the final order, because together with not contesting the proposed violation, the

7

order did no more than direct petitioner to follow a development plan that petitioner itself had proposed. "[A] party may not complain on appeal of errors that he himself invited or provoked the court to commit," *Munoz v. State Farm Lloyds of Tex.*, 522 F.3d 568, 573 (5th Cir. 2008), and the same is true when a petitioner complains that an agency took an action that petitioner itself invited. To the extent petitioner has now changed its mind about the development plan (or the timeframe for implementation) that it decided to propose in the first instance, its "obvious about-face" means the petition should be dismissed. *Delaware Dep't of Nat. Res. & Env't Control v. EPA*, 895 F.3d 90, 96 (D.C. Cir. 2018).

2. As to what remains—*i.e.*, a potential dispute over the extension request—the petition for review of the June 27, 2025 letter should be dismissed as nonfinal. As explained, that letter simply communicates that the agency "does not intend to grant any further requests to extend the deadline" for compliance. Dkt. 1-1 at 10. That statement hardly "mark[s] the 'consummation' of the agency's decisionmaking process" with respect to an actual extension request. *MCR Oil Tools, L.LC. v. United States Dep't of Transportation*, 110 F.4th 677, 688 (5th Cir. 2024) (quoting *Bennett v. Spears*, 520 U.S. 154, 177-78 (1997)). Indeed, the June 27, 2025 letter followed up on the *grant* of petitioner's prior request for an extension, and

8

petitioner cannot of course petition to review a favorable decision on that extension. And as for any future request for an extension, such a decision will depend on the request made based on the circumstances at the time of the request. Nor does the letter determine "rights or obligations" or result in "legal consequences." *Id.* As explained, those were determined in the final order.

To the extent that this Court reviews the extension letter itself, its review would be limited to whether it was arbitrary and capricious for the agency to communicate that a further extension was unlikely. *See* 49 U.S.C. § 60119(a)(3). That kind of communication is highly discretionary, and it was plainly reasonable here. *Cf. U.S. Bank Tr. Nat'l Ass'n as Tr. of Tiki Series IV Tr. v. Walden*, 124 F.4th 314, 320 (5th Cir. 2024) (explaining that district courts have "broad discretion in managing their dockets and deadlines"). The agency had already granted five extensions to petitioner, and petitioner had long ago agreed to follow the development plan itself.

## CONCLUSION

For the foregoing reasons, the petition for review should be dismissed.

Respectfully submitted,

AUGUST FLENTJE

*s/ Ben Lewis*
BEN LEWIS

*Attorneys, Civil Division,*
*Appellate Staff*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW,*
*Washington, DC 20530*

JANUARY 2026

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the typeface requirements of Rule 32(a)(5) because it uses Georgia, a proportionally spaced font, in 14-point font. It complies with Rule 32(a)(6) because it is set in a plain, roman style. It complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 1896 words.

                                              */s/ Ben Lewis*
                                              Ben Lewis

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2026, I electronically filed the foregoing motion with the Clerk of the Court by using the appellate CM/ECF system.

                                              */s/ Ben Lewis*
                                              Ben Lewis